IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| REFRESCO BEVERAGES US INC., | § § | |
| Plaintiff, | § § | |
| v. | § § | No. _____ |
| INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL 997, | § § § § | |
| Defendant. | § § | |

## PLAINTIFF REFRESCO BEVERAGES US INC.'S COMPLAINT TO VACATE ARBITRATION AWARD

Plaintiff Refresco Beverages US Inc. ("Refresco"), by and through its counsel Seyfarth Shaw LLP, alleges as follows:

### INTRODUCTION

1. This is an action to vacate the arbitration award issued on March 28, 2021 (the "Award") by Arbitrator Ruben R. Armendariz in the matter between Refresco and Defendant International Brotherhood of Teamsters Local 997 (the "Union") regarding the suspension and termination of Grievant Bobby Jones ("Jones"). A true and correct copy of the Award is attached as Exhibit A.

2. The collective bargaining agreement (the "Agreement") between Refresco and the Union sets out the parties' express agreement regarding the scope and power an arbitrator has in resolving disputes between the parties.

3. Specifically, the agreement states that "[n]o arbitrator shall have the jurisdiction or authority to add to, delete from, nullify, disregard, or modify any terms of this Agreement, or to impair any of the rights reserved to the Company under the terms hereof. . . ." A true and correct copy of the applicable collective bargaining agreement is attached as Exhibit B.

4. Moreover, the Agreement provides a clear, unambiguous, and mutually bargained for and agreed upon definition of "just cause."

5. Under the express terms of the Agreement, the arbitrator's authority was limited to determining whether the employee engaged in the conduct alleged.

6. Once it is determined that the employee engaged in misconduct, the express terms of the Agreement provide that Refresco—and not the arbitrator—is provided the sole right to determine the level of discipline imposed for any specific misconduct.

7. As a result, the arbitrator may not second guess Refresco's determination on the degree of discipline once the underlying misconduct is determined to have occurred.

8. Here, in his award, Arbitrator Armendariz violated the express terms of the collective bargaining agreement.

9. While the award made numerous factual findings that the underlying misconduct did, in fact, occur, which should have ended the inquiry, the award then questioned the level of discipline imposed by Refresco and ultimately reinstated Jones.

10. In doing so, the Arbitrator ignored the express terms of the Agreement cabining his jurisdiction and authority to the four corners of the Agreement.

11. As a result, the Arbitrator improperly substituted his personal beliefs on the severity of the Jones's misconduct for Refresco's, and effectively rewrote the Agreement to add additional provisions and requirements not included in the Agreement.

12. In ignoring the language of the Agreement, and in exceeding the express jurisdiction and authority granted to him by the parties, Arbitrator Armendariz improperly dispensed his own brand of industrial justice, and his Award therefore fails to draw its essence from the collective bargaining agreement. On this basis alone, the Award must be vacated.

13. Moreover, the Arbitrator's decision was particularly egregious due to the underlying misconduct in this matter.

14. Jones engaged in severe racial and sexual misconduct in the workplace over a long period of time, including making insensitive and inappropriate comments in the workplace about the race, religion, and sexual orientation of co-workers and spreading false and malicious rumors about other employees and managers.

15. This is the precise type of unlawful conduct that violates federal, state, and local anti-harassment statutes designed to protect employees and provide a harassment-free work environment.

16. The Arbitrator's award makes numerous factual findings supporting the conclusion that Jones engaged in these types of reprehensible behaviors; yet, the Arbitrator's award still ordered Jones reinstated to his prior position.

17. While the ability of a court to grant relief on a motion to vacate an arbitration award is limited, an arbitrator exceeding his authority and reinstating an employee credibly found to have committed workplace harassment is the rare instance where federal appellate courts have routinely overturned arbitrator awards. *See*, *e.g.*, *Newsday v. Long Island Typographical Union No. 415, CWA, AFL-CIO*, 915 F.2d 840 (2d Cir. 1990); *Stroehmann Bakeries, Inc. v. Local 776, Int'l Bro. of Teamsters*, 969 F.2d 1436 (3d Cir. 1992).

18. In short, a collective bargaining agreement does not provide a grievant with an exemption from complying with federal, state, and local workplace anti-harassment statutes, and federal appellate courts have found that arbitrator awards that effectively function as such should be disregarded, provided that the employer follows the collective bargaining agreement, which it did here.

19. Thus, given the facts of this case which are particularly serious and implicate important public policy goals, the Court must intervene and vacate the award.

## JURISDICTION AND VENUE

20. The Court has jurisdiction under Section 301 of the Labor Management Relations Act, as amended ("LMRA"), 29 U.S.C. § 185, and 28 U.S.C. §§ 1331 and 1337(a).

21. Venue lies within this judicial district pursuant to Section 301(a) and (c) of the LMRA, 28 U.S.C. §§ 185(a) and (c) because the duly authorized officers and agents of the Union are engaged in representing or acting for employees in the Northern District of Texas, Fort Worth Division. *See also* 28 U.S.C. § 124(a)(2).

## PARTIES

22. Plaintiff Refresco Beverages US Inc. is a Georgia corporation with its principal place of business located at 8112 Woodland Center Boulevard, Tampa, Florida 33614.

23. Defendant International Brotherhood of Teamsters Local 997 is a labor organization and is the collective bargaining representative for bargaining unit employees employed by Refresco at its facility located at 15200 Trinity Boulevard, Fort Worth, Texas 76155. The Union's duly authorized agents are engaged in representing and acting for its members, who are and have been Refresco employees in an industry affecting commerce within the meaning of 29 U.S.C. § 185. The Union's primary place of business is located at 4200 South Freeway #608, Fort Worth, Texas 76115.

## FACTS

**A.      Refresco and the Union.**

24. Refresco is the world's largest independent bottler for retailer and A-brands in Europe and North America.

25. Refresco's global supply chain expertise and local innovation capabilities offer an

almost unlimited variety of soft drinks, fruit juices and other beverages, manufactured to individual customer specifications and requirements.

26. Refresco operates a manufacturing facility at 15200 Trinity Boulevard, Fort Worth, Texas 76155.

27. Pursuant to the National Labor Relations Board certification in Case No. 16-RC-19685, the Union is the duly certified representative of all regular full-time and regular part-time production machine operators, batching technicians, forklift warehouse operators, PLC technicians, maintenance mechanics, shipping coordinators, quality assurance technicians, production team captains, warehouse team captains, process improvement technicians, maintenance team captains, relief machine operators, quality assurance team captains, maintenance specialists, process coordinators, and jockeys employed by Refresco at its facility located at 15200 Trinity Boulevard, Fort Worth, Texas 76155.

**B.     The Terms of the Collective Bargaining Agreement.**

28. Refresco and the Union entered into a collective bargaining agreement, i.e., the Agreement, effective July 29, 2018 through July 28, 2022.

29. In the Agreement, Refresco and the Union agreed to the following relevant provisions (emphasis added):

ARTICLE 12

GRIEVANCE PROCEDURE AND ARBITRATION

* * *

**Section 3.     Arbitration**

* * *

(d)     Limitations on Arbitration.  **The arbitrator shall confine his decision to the terms of this Agreement**, and no decision by the arbitrator may include or address any issue or matter which is not expressly made subject

to the terms of this Agreement. In interpreting and applying the provisions of this Agreement, and in making findings of fact in connection therewith, the arbitrator must make his determinations in accordance with the spirit and letter of this Agreement. **No arbitrator shall have the jurisdiction or authority to add to, delete from, nullify, disregard, or modify any terms of this Agreement, or to impair any of the rights reserved to the Company under the terms hereof, either directly or indirectly under the guise of interpretation; nor shall the arbitrator have the power to substitute his discretion and judgment for that of the Company in any matter on which the Company has not contracted away its right to exercise discretion and judgment.**

\* \* \*

## ARTICLE 13

## DISCIPLINE AND DISCHARGE

### Section 1. Just Cause for Discipline and Discharge

**The Company shall have the right to discharge or discipline any employee for just cause**. The following offenses or conduct shall be considered just cause for termination of employment:

- dishonesty or theft;

- insubordination or a refusal or failure to follow the instructions of a supervisor or manager;

- intentional or negligent damage to or destruction of Company property or equipment;

- failure to comply with safety rules;

- negligence or recklessness in operating a Company vehicle or equipment;

- behavior resulting in a serious accident while on duty;

- misrepresentation or falsification in connection with any employment-related matter or concerning employment or pay;

- **violation of the Company's rules and/or policies concerning harassment, workplace violence**, weapons in the workplace, or drugs and alcohol (including| those relating to testing);

- possession of firearms or illegal weapons; or

- fighting or intentional injury.

6

**In the event of such offenses or misconduct, the arbitrator's sole role will be to determine whether the employee engaged in the behavior alleged, in which case the employee's termination shall be upheld.**

**It is understood and agreed that the degree of discipline up to and including discharge imposed for just cause, including for the reasons listed above, shall be determined by the Company.** Further, the listing of offenses or conduct described in this Article does not preclude or in any way restrict the Company from discharging employees for other offenses or conduct.

<u>Section 2.</u>     <u>Level and Use of Discipline</u>

While the Company shall, subject to just cause, determine the level of discipline, except in the case of a terminable offense, the Company will use a progressive disciplinary process.  Although the Company may at its option elect to skip or repeat levels of discipline, in the case of a non-terminable offense, the Company normally will use a verbal warning, a written warning and a suspension prior to termination of employment.  **Subject to the provisions of Section 1 of this Article, the level of discipline chosen by the Company is subject to the grievance and arbitration provisions of Article 12.  Discipline shall remain in effect for a period of twenty-four (24) months from the date of issuance; provided, however, (i) this limitation shall not apply to discipline for violations of the Company's rules and policies relating to harassment and employee violence** and (ii) if the Union refers to the employee's overall performance or employment history during an arbitration hearing, the Company shall have the right to introduce discipline issued to the employee during the employee's entire term of employment.

**C.     Jones's Employment with Refresco.**

30.     Jones began his employment with Refresco's predecessor on February 27, 2006. At the time of his termination on May 28, 2019, Jones was employed as a fork lift operator.

31.     During his employment, Jones made numerous insensitive and inappropriate remarks in the workplace regarding race, religion, and sexual orientation and spread false rumors about other employees and managers.

32.     Jones's behavior caused his fellow employees to complain to management officials and even to the Union on repeated occasions.

33.     Jones was repeatedly counselled, warned, and disciplined regarding his disruptive behavior and for antagonizing and harassing his fellow employees, engaging in threatening

7

behavior, refusing instructions, and insubordinate conduct.

34. Over time, the Union became aware of the issues Jones's behavior was causing in the workplace.

35. For example, Shop Steward Duane Kinney requested that Union official Rick Miedema meet with various bargaining unit employees who were upset by Jones's behavior.

**D.     Jones's August 2018 Suspension.**

36. On August 3, 2018, Jones yelled at Nathan Sinegal (a coworker and fellow bargaining unit employee) to leave a common area; and Jones directed inappropriate gestures toward Sinegal.

37. Refresco's Human Resources Business Partner, Ronald Marshall, investigated the incident, including interviewing Jones to obtain Jones's side of the story.

38. During the interview, Jones began to swing his hands in a threatening manner just over Marshall's head—so close that, if Marshall had raised his head, Jones would have struck Marshall.

39. Afterwards, Marshall witnessed Jones demonstrating to another employee how Jones had swung his hands over Marshall's head.

40. Jones was suspended for three days for his behavior toward Sinegal and Marshall.

41. When Marshall advised Jones of his suspension, Jones attempted to intimidate Marshall by getting in Marshall's face and repeatedly saying, "That's all you got.  You weak."

42. Marshall was sufficiently concerned about his safety that he took a picture of Jones's license plate in the event he needed to report Jones to the police.

43. Following his August 2018 suspension, Jones, through the Union, grieved his suspension, which grievance was heard in the underlying arbitration.

**E.     Jones's May 2019 Termination.**

44.     Jones continued to engage in disruptive behavior from April 2019 until his termination in May 2019, which in turn caused his coworkers and fellow bargaining unit employees to complain to Marshall and Refresco to counsel him.

45.     On May 2, 2019, Jones began initiating and spreading a maliciously false rumor that Baron L. King—an African American bargaining unit employee who Jones also repeatedly referred to as an "Uncle Tom"—was engaged in an inappropriate, extra-marital relationship with a female driver from another company who delivered products to Refresco's Fort Worth facility.

46.     King complained to Supervisor Gates, Human Resources Business Partner Marshall, and Plant Manager Michael Jackson.

47.     As a result of this incident—and on top of the others referred to above and the previously discipline Jones had received—Jones was suspended with pay pending investigation.

48.     On May 22, 2019 Plant Manager Jackson and Human Resources Business Partner Marshall met with Jones and Union officials Rick Miedema, Charles Davis, and John Siddell. Jones denied the allegations.

49.     After further investigation and evaluation of Jones's conduct, Refresco terminated Jones's employment on May 28, 2019.

50.     The Union grieved Jones's termination, and the Union's grievances of Jones's August 2018 suspension and May 2019 termination were advanced to arbitration.

**F.     Arbitrator Armendariz's Award.**

51.     On November 6, 2020, an arbitration hearing was conducted before Arbitrator Ruben Armendariz.  The hearing transcript is attached as Exhibit C, and the hearing exhibits are attached as Exhibit D.

52. Human Resources Business Partner Marshall, Plant Manager Jackson, former Shop Stewart Kinney, former Supervisor Gates, bargaining unit employees Sinegal, Pruner, Moore, and King, and attorney Joseph R. Damato testified on behalf of Refresco. The Union only presented Jones.

53. Arbitrator Armendariz issued the Award on March 28, 2021. *See* Exhibit A.

54. In the Award, Arbitrator Armendariz sustained the grievance relating to Jones's suspension and termination, and ordered Jones reinstated.

55. In the Award, Arbitrator Armendariz found that Jones's committed the underlying misconduct, including (a) yelling at and making inappropriate gestures to bargaining unit employee Sinegal on August 3, 2018; (b) swinging his hands over Marshall's head and attempting to intimidate Marshall by getting in his face and repeatedly saying, "That's all you got. You weak."; and (c) initiating and spreading "a maliciously false rumor that [bargaining unit employee] King, who [Jones] repeatedly called an 'Uncle Tom,' was engaged in an inappropriate relationship with a female driver from another company. . . ." (Award, at 10-11).

56. Nevertheless, Arbitrator Armendariz did not apply the definition of "just cause" that the parties bargaining for and that governed Refresco's decision to suspend and then terminate Jones's employment.

57. The Agreement provides that "violation of the Company's rules and/or policies concerning harassment, workplace violence" automatically constitute "just cause," and "[i]n the event of such offenses or misconduct, the arbitrator's sole role will be to determine whether the employee engaged in the behavior alleged, in which case the employee's termination shall be upheld."

58. The Agreement provides that Refresco may determine the degree of discipline

10

imposed for each offense, whether that offense is one of the enumerated offenses or a lesser offense, and that "the degree of discipline up to and including discharge imposed for just cause . . . shall be determined by the Company." (Agreement, at Art. 13, Sec. 1).

59. In fact, the Agreement bestows on Refresco the right to determine the severity even of progressive discipline. (Agreement, at Art. 13, Sec. 2) ("**Subject to the provisions of Section 1 of this Article**, the level of discipline chosen by the Company is subject to the grievance and arbitration provisions of Article 12.) (emphasis added).

60. Furthermore, the Agreement precludes the Arbitrator from "add[ing] to, delet[ing] from, nullify[ing], disregard[ing], or modify[ing] any terms of this Agreement." (Agreement, at Art. 12, Sec. 3(d)).

61. The Agreement specifically provides that the Arbitrator does not "have the power to substitute his discretion and judgment for that of the Company in any matter on which the Company has not contracted away its right to exercise discretion and judgment." (Agreement, at Art. 12, Sec. 3(d)).

62. Thus, Arbitrator Armendariz was not granted the authority to question Refresco's determination of the level of discipline issued.

63. Instead, his authority extended only to determining whether Jones engaged in the conduct alleged.

64. Having clearly found that Jones, in fact, did engage in the alleged conduct, the Arbitrator's job was complete, and he should have applied the plain language of Articles 12 and 13 to Jones's grievances, denied the grievances, and upheld Jones's suspension and termination.

65. Rather than properly recognize and discharge his role as circumscribed by the

11

Agreement, Arbitrator Armendariz improperly weighed Jones's misconduct and substituted his own judgment for that of Refresco—thereby dispensing his own brand of industrial justice.

66. Accordingly, the Award fails to draw its essence from the collective bargaining agreement in contravention of 29 U.S.C. § 185. *See*, *e.g.*, *Beaird Industries, Inc. v. Local 2297, Intern. Union*, 404 F.3d 942, 946-47 (5th Cir. 2005); *Houston Lighting & Power Co. v. Int'l Brother. of Electrical Workers, Local Union No. 66*, 71 F.3d 179, 183-84 (5th Cir. 1995).

**G.    The Arbitrator's Award Contravenes Public Policy.**

67. In addition to violating the express terms of the collective bargaining agreement, the Award also runs counter to the strong public policy favoring anti-discrimination laws, and an open and inclusive workplace free of harassment and threats of workplace violence.

68. Courts have recognized the strong public policy favoring anti-discrimination laws and have used this public policy as a basis to overturn arbitrator awards which fail to take into account the seriousness of racial or sexual harassment. *See*, *e.g.*, *Newsday v. Long Island Typographical Union No. 415, CWA, AFL-CIO*, 915 F.2d 840 (2d Cir. 1990); *Stroehmann Bakeries, Inc. v. Local 776, Int'l Bro. of Teamsters*, 969 F.2d 1436 (3d Cir. 1992).

**CAUSE OF ACTION**
**VACATUR OF ARBITRATION AWARD UNDER 28 U.S.C. 185**

69. Refresco repeats and re-alleges the allegations made in paragraphs 1 through 68 above as if fully set forth herein.

70. Article 12 of the Agreement is unambiguous and expressly provides that "[t]he arbitrator shall confine his decision to the terms of this Agreement. . . . No arbitrator shall have the jurisdiction or authority to add to, delete from, nullify, disregard, or modify any terms of this Agreement, or to impair any of the rights reserved to the Company under the terms hereof, either directly or indirectly under the guise of interpretation; nor shall the arbitrator have the power to

substitute his discretion and judgment for that of the Company in any matter on which the Company has not contracted away its right to exercise discretion and judgment."

71. Article 13 of the Agreement is unambiguous and expressly provides that "[i]t is understood and agreed that the degree of discipline up to and including discharge imposed for just cause . . . shall be determined by the Company"; "the Company may at its option elect to skip or repeat levels of discipline"; "[s]ubject to the provisions of Section 1 of this Agreement, the level of discipline chosen by the Company is subject to the grievance and arbitration provisions of Article 12"; and "[d]iscipline shall remain in effect for a period of twenty-four (24) months from the date of issuance; provided, however, (i) this limitation shall not apply to discipline for violations of the Company's rules and policies relating to harassment and employee violence. . . ."

72. Arbitrator Armendariz did not confine his decision to the terms of the Agreement; to the contrary, he effectively rewrote the parties collectively bargained agreement by failing to apply the unambiguous definition of "just cause" set out in Article 13, substituting his opinion on the severity of Jones's misconduct for that of Refresco, adding additional requirements for termination and suspension beyond the plain language of the Agreement, and ignoring the language in the Agreement permitting Refresco to consider harassing conduct at any time.

73. In doing so, Arbitrator Armendariz exceeded his authority under the parties' collectively bargained agreement, improperly dispensed his own brand of industrial justice. Accordingly, the Award fails to draw its essence from the collective bargaining agreement in contravention of 29 U.S.C. § 185.

74. Arbitrator Armendariz also contravenes strong public policies prohibiting tolerating discriminatory conduct and violent or threatening behavior in the workplace.

75. Because the Award fails to draw its essence from the collective bargaining agreement, and because the Award contravenes critical public policy aims, Refresco has been injured and vacatur of the Award is proper.

## CLAIM FOR RELIEF

76. For the above reasons, Refresco respectfully prays for relief against the Union as follows:

   a. For an Order vacating in total the Award dated March 28, 2021;

   b. For an Order denying the Union's contractual grievance against Refresco; and

   c. For an Order awarding Refresco its costs and fees of suit incurred and such other and further monetary and equitable relief that the Court may deem just and proper.

Dated: April 9, 2021

Respectfully submitted,

SEYFARTH SHAW LLP,

By: s/ John P. Phillips
John P. Phillips
Texas Bar No. 24083659
700 Milam Street, Suite 1400
Houston, Texas 77002
(713) 225-2300 – Telephone
(713) 225-2340 – Facsimile
jphillips@seyfarth.com

John J. Toner
(Application for Admission *Pro Hac Vice* Forthcoming)
Bryan M. O'Keefe
(Application for Admission *Pro Hac Vice* Forthcoming)
975 F Street, N.W.
Washington, D.C. 20004
(202) 463-2400 – Telephone
(202) 828-5393 – Facsimile
jtoner@seyfarth.com
bokeefe@seyfarth.com

ATTORNEYS FOR PLAINTIFF REFRESCO BEVERAGES US INC.