**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **REFRESCO BEVERAGES US INC.,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | |
| | § | |
| | § | **CIVIL ACTION NO. 4:21-CV-0523-O** |
| | § | |
| **INTERNATIONAL BROTHERHOOD** | § | |
| **OF TEAMSTERS LOCAL 997,** | § | |
| | § | |
| *Defendant.* | § | |
| | § | |

**DEFENDANT AND COUNTERCLAIMANT INTERNATIONAL**
**BROTHERHOOD OF TEAMSTERS LOCAL 997'S BRIEF IN**
**SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

DAVID K. WATSKY
State Bar Number 20932600
*LYON, GORSKY & GILBERT, L.L.P.*
12001 North Central Expressway
Suite 650
Dallas, Texas 75243
Telephone: 214-965-0097
Facsimile: 214-965-0097
E-Mail: dwatsky@lyongorsky.com
*ATTORNEY FOR DEFENDANT AND*
*COUNTERCLAIMANT*

# TABLE OF CONTENTS

I. SUMMARY OF THE UNION'S CONTENTIONS ................................................................ 1

II. UNDISPUTED MATERIAL FACTS ................................................................ 2

III. STATEMENT OF ISSUES TO BE RULED UPON BY THE COURT ............................ 6

IV. SUMMARY OF THE UNION'S ARGUMENTS ................................................. 6

V. ARGUMENTS AND AUTHORITIES ................................................................. 7

    A.      Summary Judgment Standard ................................................................ 7

    B.      Standard of Review for Arbitration Awards ......................................... 7

    C.      The Award Draws Its Essence From the Parties' Agreement and Should Be
          Enforced. ................................................................................................. 9

    D.      Arbitrator Armendariz' Award Does Not Violate Public Policy. ............................ 13

    E.      The Union Is Entitled to Attorney's Fees. ................................................. 16

VI. CONCLUSION ................................................................................................. 177

# TABLE OF AUTHORITIES

## Cases

*Albemarle Corp. v. United Steel Workers*,
    703 F.3d 821 (5th Cir. 2013) ........................................................................................ 14, 15

*Allied Waste Sys., Inc, v. Int'l Bhd. of Teamsters, Local 767*,
    No. 4:06-CV-328-Y, 2007 WL 1703634, at *7 (N.D. Tex. June 13, 2007).................16, 17

*Anderson v. Liberty Lobby*,
    477 U.S. 242 (1986)........................................................................................................ 7

*Bell Prod. Eng'rs Ass'n v. Bell Helicopter Textron*,
    688 F.2d 997 (5th Cir. 1982) ......................................................................................... 16

*Burlington Indus., Inc. v. Ellerth*,
    524 U.S. 742 (1998)........................................................................................................ 15

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)........................................................................................................ 7

*Chrysler Motors Corp. v. Int'l Union, Allied Indus. Workers*,
    959 F.2d 685 (7th Cir. 1992) ......................................................................................... 15

*Continental Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*,
    555 F.3d 399 (5th Cir. 2009) ......................................................................................... 15

*Delek Refining, Ltd. v. Local 202, United Steelworkers*,
    891 F.3d 566 (5th Cir. 2018)……………………………………………………6, 9, 13, 16-17

*Delta Queen v. District 2 Marine Engineers Beneficial Ass'n.*,
    889 F.2d 599 (5th Cir. 1989) ......................................................................................... 8

*Dist. 50, United Mine Workers v. Bowman Transp., Inc.*,
    421 F.2d 934 (5th Cir. 1970) ......................................................................................... 16

*Dow Chem. Co. v. Local No. 564, Int'l Union of Operating Eng'rs*, 83 Fed. Appx.
    648 (5th Cir. 2003)……………………………………………………………………8, 9

*Duckett v. City of Cedar Park*,
    950 F.2d 272 (5th Cir. 1992) ......................................................................................... 7

*E. Assoc. Coal Corp. v. United Mine Workers*,
    531 U.S 57 (2000)........................................................................................... …..6, 8, 14

*Houston Lighting & Power Co. v. IBEW*,
   71 F.3d 179 (5th Cir. 1995) ........................................................................... 8

*Int'l Ass'n of Machinists, Dist. 776 v. Texas Steel Co.*,
   639 F.2d 279 (5th Cir. Unit A 1981) ................................................. ……16

*Int'l Ass'n of Machinists, Dist. No. 145 v. Modern Air Transp.*,
   495 F.2d 1241 (5th Cir. 1974) ..................................................................... 9

*Int'l Chem. Workers Union v. Day & Zimmerman, Inc.*,
   791 F.2d 366 (5th Cir. 1986) ..................................................................... 12

*Muschany v. United States*,
   324 U.S. 49 (1945) ....................................................................................... 13

*Oil, Chem. & Atomic Workers, Local No. 4-228 v. Union Oil Co. of Calif.*,
   818 F.2d 437 (5th Cir. 1987) ..................................................................... 8

*Slaughter v. S. Talc. Co.*,
   949 F.2d 167 (5th Cir. 1991) ..................................................................... 7

*Teamsters Local No. 5 v. Formosa Plastics*,
   363 F.3d 368 (5th Cir. 2004) ................................................................. 7, 8

*Trinity Indus., Inc. v. United Steelworkers*,
   891 F. Supp. 342 (N.D. Tex. 1995) ........................................................... 9

*Union of Trans. Employees v. Oil Transpt. Co.*,
   591 F. Supp. 439 (N.D. Tex. 1984) ....................................................... 8, 9

*United Paperworkers Int'l Union v. Misco*,
   484 U.S. 29 (1987) ...................................................................….6, 8, 14

*United Steelworkers v. Am. Mfg. Co.*,
   363 U.S. 564 (1960)…………………………………………………… 6, 7, 9, 10

*United Steelworkers v. Enterprise Wheel & Car Corp.*,
   363 U.S. 593 (1960).......................................................................... 6, 8, 9

*United Steelworkers v. Warrior & Gulf Navig. Co.*,
    363 U.S. 574 (1960).............................................................................................. 6, 7

*W.R. Grace v. Local Union 759, United Rubber Workers*,
    461 U.S. 757 (1983)........................................................................................... 6, 13

*Weber Aircraft Inc. v. General Warehousemen Local 767*,
    253 F.3d 821 (5th Cir. 2001) ............................................................................... 15

*Westvaco Corp. v. United Paperworkers Int'l Union*,
    171 F.3d 971 (4th Cir. 1999) ......................................................................... 15, 16

**Rules**

Fed. R. Civ. P. 56(a) ........................................................................................................ 7

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **REFRESCO BEVERAGES US INC.,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | |
| | § | |
| | § | **CIVIL ACTION NO. 4:21-CV-0523-O** |
| **INTERNATIONAL BROTHERHOOD** | § | |
| **OF TEAMSTERS LOCAL 997,** | § | |
| | § | |
| *Defendant.* | § | |
| | § | |

**DEFENDANT AND COUNTERCLAIMANT INTERNATIONAL**
**BROTHERHOOD OF TEAMSTERS LOCAL 997'S BRIEF IN**
**SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE COURT:

Defendant and Counterclaimant International Brotherhood of Teamsters Local 997 ("the Union"), hereby moves for summary judgment on all claims against it, and on its counterclaim againstPlaintiff Refresco Beverages US Inc. ("the Company"). In support of its motion, the Union would respectfully show the Court the following:

## I. SUMMARY OF THE UNION'S CONTENTIONS

The Company has brought this action to vacate an arbitration award ("Award") holding that employee Bobby Jones ("Jones") was discharged without cause and ordering the Company to reinstate Jones and pay him back pay. The Company contends that the Arbitrator acted outside of his authority and jurisdiction, and that the Award violates public policy. The Union has counterclaimed to enforce the Award, contending that the Award draws its essence from the parties' agreement and does not violate public policy. The Union contends that Jones should be reinstated with back pay from the date of his termination, both before and after the date of the Award, plus interest from the date of the Award. The Union further contends that the Company's

refusal to comply with the Award is without justification, and the Union is therefore entitled to attorneys' fees in this action.

## II. UNDISPUTED MATERIAL FACTS

1.      This Court has jurisdiction over this matter pursuant to Section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a), and 28 U.S.C. §§ 1331 and 1337. *Pl. Orig. Compl. § 20; Def. Orig. Ans. § 20.*

2.      Venue is proper under 29 U.S.C. § 185. *Pl. Orig. Compl. § 21; Def. Orig. Ans. § 21.*

3.      The Company is an employer engaged in commerce, as defined in Sections 2(2) and (6) of the National Labor Relations Act ("NLRA"), 29 U.C.S. §§ 152(2) and (6). The Company operates a facility in Fort Worth, Texas, within the territorial jurisdiction of this Court. *Pl. Orig. Compl. § 26-27; Def. Orig. Ans. § 26-27.*

4.      The Union is a labor organization as defined in Section 2(5) of the NLRA, 29 U.S.C. § 152(5). The Union is engaged in representing employees of the Company at its Fort Worth facility. *Pl. Orig. Compl. § 23; Def. Orig. Ans. § 23.*

5.      Terms and conditions of employment for Union-represented employees at the Company's Fort Worth facility are governed by a Collective Bargaining Agreement ("CBA") between the Company and the Union. The relevant CBA is effective from July 29, 2018 to July 28, 2022. *Pl. Orig. Compl. § 28; Def. Orig. Ans. § 28; Jt. App. 28-73.*

6.      Two different articles of the CBA (Articles 13 and 20) require that the Company must have just cause to discipline and discharge employees. *Jt. App. 50-51, 54-57.*

7.      Article 12 of the CBA sets forth a grievance procedure culminating in arbitration. Section 3(c) of Article 12 states that "[t]he decision of the arbitrator shall be in writing and shall be ***final and binding*** upon the parties when rendered upon a matter within the authority of the arbitrator and within the scope of matters subject to arbitration as provided in this Agreement. (emphasis added). *Jt. 46-50.*

8.      Grievant Bobby Jones ("Jones" or "Grievant") worked at the Fort Worth facility for thirteen years prior to his termination in May 2019. *Def. Counterclaim § 8, Pl. Ans. Counterclaim § 8.*

9.      Jones filed timely grievances under the CBA, challenging his termination and a prior suspension. The grievances were processed through the steps of the contractual grievance procedure, and the parties agreed that both the suspension and termination grievances would be heard in one arbitration before Arbitrator Ruben Armendariz. *Def. Counterclaim § 9, Pl. Ans. Counterclaim § 9.*

10.      The arbitration hearing was held before the Arbitrator on November 6, 2020. Both parties had a full opportunity to present evidence and to cross-examine witnesses, and both parties submitted post-hearing briefs. *Def. Counterclaim § 10, Pl. Ans. Counterclaim § 10.*

11.      On March 28, 2021, the Arbitrator issued the Arbitrator's Discussion, Opinion and Award ("the Award"). *Jt. App. 1-27.*

12.      The Arbitrator made the following findings and decision:

Company has the burden of proof to establish grievant was suspended and terminated for just cause.

The arbitrator finds that procedural due process issues exist with the suspension and discipline issued.

The arbitrator finds that the language in Article 13, Section 3 of the CBA is not ambiguous but is very clear and straightforward: The Company will "impose discipline within five (5) working days of completing its investigation of the behavior or misconduct leading to the discipline." Union's argument that the discipline was not timely issued appears to be reasonable. Most of the incidents cited as reasons for grievant's termination had occurred almost one month prior to grievant's discharge on May 28, 2019. (1) The failure to attend a Team Meeting occurred on April 6, 2019. (2) The refusal to cover an employee for a lunch break occurred on April 3, 2019. (3) The alleged blocking an employee's access to Line 3 occurred on April 3, 2019. On April 10, 2019 Marshall and Jackson met with the grievant as well as two of the Union representatives to discuss these incidents and grievant's behavior. Based on that meeting on April 10, 2019, the Company's investigation of those three incidents were complete.  The

time for the Company to use those incidents as the basis for discipline was April 17, 2019, which is five working days. The three of five basis for grievant's discharge had all occurred outside the appropriate time period for taking discipline. Under these circumstances, Union's discussion of Article 13, Section 3 is persuasive. The only incidents remaining is "questioning assignments and spreading false rumors. Union argued the questioning of assignments is not listed in the code of conduct or personnel manual. If there are issues concerning an employee in one position being asked to perform the duties of another position, it is entirely reasonable to question such assignment. In the last allegation of allegedly spreading false rumors involved two incidents with Brenda Gates and Baron King and both were explained away.

The arbitrator finds with the suspension at issue, Sinegal's written complaint does not make any allegations that grievant had made any hand gestures towards him. The only hand gestures adduced at hearing was Marshall's testimony that he called the grievant into his office to talk about the incident and grievant had allegedly made hand gestures over Sinegal's head. The suspension document makes no assertion that grievant did anything that was inappropriate towards Marshall at any time. Marshall's inappropriate expansion of the reasons he suspended grievant takes this case into the doctrine of "changing reasons." Under this doctrine an improper motive may be inferred and would establish the discipline issued is a pretext.

The arbitrator finds the due process issues and the changing reasons are sufficient to preclude a finding of "just cause." This finding pretty much eliminates the need to engage in an academic discussion of the just cause language in the CBA. This arbitrator understands the Company's argument the contractual language limits the arbitrator's exercise of discretion on the matter of penalty. Having found merit to the "due process" arguments and "changing reasons" argument, just cause is never established based on the reasons stated in the termination document.

Additionally, the arbitrator finds on the matter of exhibits there is an issue of timeliness and relevance based on the reasons stated on the termination document.

The arbitrator finds the Company's Step 3 disciplinary procedures make it clear that employees who are given a Step 3 Decision Making Session must be provided a "Total Performance Commitment" document, and that if the employee thereafter fails to meet acceptable standards of behavior, he/she may then be terminated. In this case, it is undisputed grievant was never given such a document to sign or acknowledge when he was suspended in August 2018. The last Total Performance Commitment that grievant signed was in July 2016, well beyond the one year that such document remained active. The facts,

however, clearly reveal that the Employee Handbook still contained this policy, and the Handbook was the applicable policy at the time of grievant's discipline. Here, the arbitrator finds merit to the Union's argument the Company failed to comply with its own policies with respect to the discipline and termination of grievant. Thus, the Company's failure to follow its own rules and regulations is detrimental to its case.

The arbitrator finds on the matter of mitigation, grievant's tenure is significant (13 years).

The arbitrator finds the grievant's name calling is offensive and would have merited discipline if it had been alleged in the charging document. Company however did develop evidence of harassment but it was not clearly alleged in the charging documents.

It is therefore, the Opinion of this arbitrator the procedural due process issues and changing reasons argument advanced by the Union are very persuasive.  Under these circumstances, Company did not establish just cause to discharge grievant.

Accordingly, the undersigned issues the following,

Award

The grievance is sustained over the suspension and termination. The grievant is to be immediately reinstated to his former position and shall retain all benefits and seniority.  With respect to back pay, normally this would be a make whole requirement but the parties negotiated and memorialized an agreement over back pay into the CBA. Nevertheless, the arbitrator will retain jurisdiction to resolve any issue pertaining to backpay.
*Jt. App. 1-27.*

13.    Based on the above findings, the Arbitrator ruled that the Company did not have just cause to suspend and terminate Jones. The Arbitrator sustained the grievance and ordered that "the Grievant be immediately reinstated to his former position and retain all benefits and seniority. *Jt. App. 1-27.*

14.    In addition to reinstatement, the Arbitrator acknowledged that the Company and the Union had an agreement regarding the award of backpay in the event that the Union was the prevailing party, and that he would retain jurisdiction in the event there were any issues regarding backpay. *Jt. App. 1-27.*

15.    The Company did not reinstate Jones or pay him any backpay, but instead filed this lawsuit to vacate the Award. *Def. Counterclaim § 15, Pl. Ans. Counterclaim § 15.*

### III. STATEMENT OF ISSUES TO BE RULED UPON BY THE COURT

The Union requests that the Court grant the Union's Motion for Summary Judgment, enforce Arbitrator Armendariz' Award, dismiss the Company's action to vacate the Award, and award to the Union its costs and reasonable and necessary attorneys' fees incurred in this litigation.

### IV. SUMMARY OF THE UNION'S ARGUMENTS

The Company has brought this action to vacate an arbitrator's award. The Union has counterclaimed to enforce the award. There is a strong federal policy in favor of arbitration as a means of resolving disputes under a collective bargaining agreement. *United Steelworkers v. Am. Mfg. Co.*, 363 U.S. 564 (1960); *United Steelworkers v. Warrior & Gulf Navig. Co.*, 363 U.S. 574 (1960); *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593 (1960). Courts do not review the merits of arbitration awards. *Enterprise Wheel*, 363 U.S. at 596-99. An award draws its essence from the CBA if the award is "rationally inferable" from the CBA. *Delek Refining, Ltd. v. Local 202, United Steelworkers*, 891 F.3d 566, 570 (5th Cir. 2018). The Award at issue here is rationally inferable from the parties' CBA and should be enforced.

A court may not enforce an award that is contrary to public policy; however, the public policy must be well defined, dominant, and based on laws and legal precedents. *E. Assoc. Coal Corp. v. United Mine Workers*, 531 U.S 57 (2000); *United Paperworkers Int'l Union v. Misco*, 484 U.S. 29 (1987); *W.R. Grace v. Local Union 759, United Rubber Workers*, 461 U.S. 757 (1983). The question is whether the award, not the grievant's underlying conduct, violates public policy. *E. Assoc. Coal*, *supra*; *Misco*, *supra.* Arbitrator Armendariz' Award does not violate any well-defined and dominant public policy.

The Company's refusal to abide by the Award is "without justification," as it is based on

nothing but disagreement with the Arbitrator's factual findings, interpretation of the CBA, and issued remedy. The Union is therefore entitled to its reasonable attorneys' fees incurred in this litigation. *Delek Refining*, 891 F.3d at 593.

## V. ARGUMENTS AND AUTHORITIES

### A.    Summary Judgment Standard

Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The applicable substantive law determines which facts are material. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992).  Only factual disputes that "could affect the outcome of the suit under the governing law will properly preclude summary judgment." *Liberty Lobby*, 477 U.S. at 248. The moving party bears the burden of informing the Court of the basis for its motion, and of identifying the portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" that show there are no genuine disputes of material fact. *Celotex*, 477 U.S. at 323; *Slaughter v. S. Talc. Co.*, 949 F.2d 167, 170 (5th Cir. 1991).

### B.    Standard of Review for Arbitration Awards

In numerous decisions, the Supreme Court has articulated a long-standing national labor policy favoring the resolution of labor disputes through the arbitration process and disfavoring judicial intervention. "The courts . . . have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim." *United Steelworkers v. Am. Mfg. Co.*, 363 U.S. 564, 568 (1960) (footnote omitted). A reviewing court "should view with suspicion an attempt to persuade it to become entangled in the construction of the substantive provisions of a labor agreement, even through the back door of interpreting the arbitration clause, when the

alternative is to utilize the services of an arbitrator." *United Steelworkers v. Warrior & Gulf Navig. Co.*, 363 U.S. 574, 585 (1960); *see also Teamsters Local No. 5 v. Formosa Plastics*, 363 F.3d 368, 371 (5th Cir. 2004) (holding that a district court's review of an arbitrator's decision is "extremely deferential").

Similarly, the Supreme Court has consistently reiterated the importance of judicial deference to an arbitrator's interpretation of collective bargaining agreements:

> Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept. Courts . . . do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts.

*United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 37-38 (1987). Thus, "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *Id.* at 38; *see also E. Assoc. Coal Corp. v. United Mine Workers*, 531 U.S. 57, 62 (2000) (stating that "as long as [an honest] arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the fact that a court is convinced he committed serious error does not suffice to overturn his decision.") (internal quotation omitted); *Houston Lighting & Power Co. v. IBEW*, 71 F.3d 179, 181-82 (5th Cir. 1995) (stating that award "cannot be set aside" as long as essence drawn from CBA and arbitrator not fashioning "own brand of industrial justice") (quoting *Delta Queen v. District 2 Marine Engineers Beneficial Ass'n.*, 889 F.2d 599, 602 (5th Cir. 1989)). "The 'essence' standard is interpreted expansively so as to uphold the award, rather than restrictively." *Oil, Chem. & Atomic Workers, Local No. 4-228 v. Union Oil Co. of Calif.*, 818 F.2d 437, 440 (5th Cir. 1987); *see also Dow Chem. Co. v. Local No. 564, Int'l Union of Operating Eng'rs*, 83 Fed. Appx. 648, 651-52 (5th Cir. 2003). The arbitrator may not ignore the plain language of the CBA, but, nevertheless, a court may not overrule an arbitrator's decision simply

because the court prefers a different interpretation of the contract. *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 599 (1960); *Union of Trans. Employees v. Oil Transpt. Co.*, 591 F. Supp. 439, 443 (N.D. Tex. 1984).

Following Supreme Court precedent, the Fifth Circuit has long held that an arbitrator's award must be enforced if it is "rationally inferable" from the letter or purpose of the contract. *Delek Refining, Ltd. v. Local 202, United Steelworkers*, 891 F.3d 566, 570 (5th Cir. 2018); *Int'l Ass'n of Machinists, Dist. No. 145 v. Modern Air Transp.*, 495 F.2d 1241, 1245 (5th Cir. 1974); *Trinity Indus., Inc. v. United Steelworkers*, 891 F. Supp. 342, 346 (N.D. Tex. 1995).

**C.    The Award Draws Its Essence From the Parties' Agreement, and Should Be Enforced.**

Arbitrator Armendariz' Award draws its essence from the CBA and does not, as the Company asserts, ignore the plain language of the CBA. The Award should be enforced because it is rationally inferable from the CBA, and the Company's disagreement with the arbitrator's decision does not provide grounds for vacating the award.

Article 12 of the CBA sets out the grievance and arbitration procedure. Section 3(c) of that Article 12 addresses the authority of the arbitrator:

> (c) <u>Authority of the Arbitrator.</u> The ***arbitrator so selected shall have the power to make determinations of fact on the questions submitted to him and apply them to the provisions of this Agreement alleged to have been violated.*** The arbitrator shall be bound by the facts and evidence submitted to him and may not go beyond the terms of this Agreement in rendering his decision. ***The decision of the arbitrator shall be in writing and shall be final and binding upon the parties*** when rendered upon a matter within the authority of the arbitrator and within the scope of matters subject to arbitration as provided in this Agreement.
>
> *CBA, p. 14, Jt. App. 48* (emphasis added).

Here, as in *Misco*, the parties have agreed to submit questions of contract interpretation to binding arbitration. Therefore, the Court's function is "very limited . . . . In these circumstances the moving party should not be deprived of the arbitrator's judgment, when it was his judgment and

all that it connotes that was bargained for." *Misco*, 484 U.S. at 36-37 (quoting *United Steelworkers v. Am. Mfg. Co.*, 363 U.S. 564, 567-68 (1960)). Though the Company may be disgruntled with the Award, the parties should not be deprived of that for which they bargained.

Arbitrator Armendariz noted that he had been selected in the manner described in the CBA, and that the matter was properly before him. *Award at 2, Jt. App. at 3.* Arbitrator Armendariz observed that the CBA allows the Company to "demote, suspend, discipline or discharge employees for just cause." *Award at 6, Jt. App. at 7.* He also acknowledged in the Award the authority that he had under the parties' CBA (Art. 12, Sec. 3(c)) and the limitations on his authority as referenced in Art. 12, Sec. 3(d). *Award at 3, Jt. App. at 4.*

There were many bases to the Arbitrator Armendariz' ruling that the Company failed to establish that it just cause to discharge Jones. Any one of them, standing alone, is more than sufficient to support his decision. First, the arbitrator found that the Company did not comply with the CBA's requirement that the Company issue discipline to employees within five days' of the completion of its investigation into alleged employee misconduct:

> The arbitrator finds that the language in Article 13, Section 3 of the CBA is not ambiguous but is very clear and straightforward: The Company will "impose discipline within five (5) working days of completing its investigation of the behavior or misconduct leading to the discipline." Union's argument that the discipline was not timely issued appears to be reasonable. Most of the incidents cited as reasons for grievant's termination had occurred almost one month prior to grievant's discharge on May 28, 2019. (1) The failure to attend a Team Meeting occurred on April 6, 2019. (2) The refusal to cover an employee for a lunch break occurred on April 3, 2019. (3) The alleged blocking an employee's access to Line 3 occurred on April 3, 2019. On April 10, 2019 Marshall and Jackson met with the grievant as well as two of the Union representatives to discuss these incidents and grievant's behavior. Based on that meeting on April 10, 2019, the Company's investigation of those three incidents were complete. The time for the Company to use those incidents as the basis for discipline was April 17, 2019, which is five working days. The three of five basis for grievant's discharge had all occurred outside the appropriate time period for taking discipline. Under these circumstances, Union's discussion of Article 13, Section 3 is persuasive. The only incidents remaining is "questioning assignments and spreading false rumors.

Union argued the questioning of assignments is not listed in the code of conduct or personnel manual. If there are issues concerning an employee in one position being asked to perform the duties of another position, it is entirely reasonable to question such assignment. In the last allegation of allegedly spreading false rumors involved two incidents with Brenda Gates and Baron King and both were explained away.
*Award at 24, Jt. App. 25.*

Next, the arbitrator found that there was a difference between what the Company's charging documents stated he had allegedly done and what the Company tried to present at the hearing:

The arbitrator finds with the suspension at issue, Sinegal's written complaint does not make any allegations that grievant had made any hand gestures towards him. The only hand gestures adduced at hearing was Marshall's testimony that he called the grievant into his office to talk about the incident and grievant had allegedly made hand gestures over Sinegal's head. The suspension document makes no assertion that grievant did anything that was inappropriate towards Marshall at any time. Marshall's inappropriate expansion of the reasons he suspended grievant takes this case into the doctrine of "changing reasons." Under this doctrine an improper motive may be inferred and would establish the discipline issued is a pretext.
*Award at 24-25, Jt. App. 25-26.*

Next, Arbitrator Armendariz specifically ruled that the Company had failed to establish it had just cause:

The arbitrator finds the due process issues and the changing reasons are sufficient to preclude a finding of "just cause." This finding pretty much eliminates the need to engage in an academic discussion of the just cause language in the CBA. This arbitrator understands the Company's argument the contractual language limits the arbitrator's exercise of discretion on the matter of penalty. Having found merit to the "due process" arguments and "changing reasons" argument, just cause is never established based on the reasons stated in the termination document.
*Award at 25, Jt. App. 26.*

In addition to the above-referenced well-founded analysis of the Company's failures regarding its (1) lack of compliance with the CBA time limits for issuing discipline, (2) lack of notice of specific charges to the Union and Jones, and expansion of reasons for disciplining Jones, Arbitrator Armendariz went even further in determining a lack of just cause in this case. Specifically, the

evidence was undisputed that the Company failed to comply with its detailed disciplinary policy contained in the Employee Handbook:

> The arbitrator finds the Company's Step 3 disciplinary procedures make it clear that employees who are given a Step 3 Decision Making Session must be provided a "Total Performance Commitment" document, and that if the employee thereafter fails to meet acceptable standards of behavior, he/she may then be terminated. In this case, it is undisputed grievant was never given such a document to sign or acknowledge when he was suspended in August 2018. The last Total Performance Commitment that grievant signed was in July 2016, well beyond the one year that such document remained active. The facts, however, clearly reveal that the Employee Handbook still contained this policy, and the Handbook was the applicable policy at the time of grievant's discipline. Here, the arbitrator finds merit to the Union's argument the Company failed to comply with its own policies with respect to the discipline and termination of grievant. Thus, the Company's failure to follow its own rules and regulations is detrimental to its case.
> *Award at 25, Jt. App. 26; Co. Ex. 3, p. 19, Jt. App. 246.*

All of Arbitrator Armendariz' factual findings have support in the record and his conclusions related to the parties' CBA have foundation in both the CBA itself as well as well-settled arbitral law. Arbitrator Armendariz also addressed the Company's arguments regarding its allegations that Jones engaged in discriminatory/harassing behavior. He properly concluded that those allegations were not properly noted in the Company's charges that it gave the Union and Jones, or were not timely under the CBA's five-day notice requirements:

> The arbitrator finds the grievant's name calling is offensive and would have merited discipline if it had been alleged in the charging document. Company however did develop evidence of harassment but it was not clearly alleged in the charging documents.
> *Award at 25, Jt. App. 26.*

While this may not be the Company's or the court's preferred interpretation of the CBA, "the courts have no business overruling [an arbitrator] because their interpretation of the contract is different from his." *Enterprise Wheel*, 363 U.S. at 599; *see also Int'l Chem. Workers Union v. Day & Zimmerman, Inc.*, 791 F.2d 366, 370 (5th Cir. 1986).

Based on his well-reasoned analysis, Arbitrator Armendariz found that the Company's

termination of Jones did not meet the requirements of just cause. *Award at 25-26, Jt. App. at 26-27.* Arbitrator Armendariz ordered the Company to reinstate Jones and award him back pay pursuant to a contingent agreement that the parties made. *Award at 26, Jt. App. at 27.* Arbitrator Armendariz did exactly what he was commissioned to do: he considered the evidence submitted, found facts based on that evidence, and applied the CBA to the facts he found. Where "[t]he parties agreed to be bound by the judgment of the arbitrator," and "the arbitrator's exercise of his discretion does not conflict with the CBA," the Court should enforce the Award. *Delek Refining*, 891 F.3d at 566. Arbitrator Armendariz' Award draws its essence from the parties' CBA and should therefore be enforced.

**D.    Arbitrator Armendariz' Award Does Not Violate Public Policy.**

The Supreme Court first articulated the public policy exception in *W.R. Grace & Co. v. Local Union 759, United Rubber Workers*, 461 U.S. 757 (1983). In *W.R. Grace*, a conciliation agreement in a Title VII case required that in the event of layoffs, the company would "maintain the existing proportion of women in the plant's bargaining unit." *Id.* at 760. A subsequent District Court order made the conciliation agreement binding on all parties. *Id.* at 761. The company then laid off employees pursuant to the conciliation agreement, and several male employees who were laid off filed grievances under the CBA's seniority provision. *Id.* An arbitrator ordered the company to pay damages to three of the grievants. *Id.* at 763.

In enforcing the award, the Court set forth the basic rule that "a court may not enforce a collective-bargaining agreement that is contrary to public policy." *Id.* at 766. The Court cautioned that "[s]uch a public policy, however, must be well defined and dominant, and is to be ascertained 'by reference to the laws and legal precedents and not from general considerations of supposed public interests.'" *Id.* (quoting *Muschany v. United States*, 324 U.S. 49, 66 (1945)). Applying this standard, the Court found that the award at issue was not contrary to public policy. The Court reasoned:

> Even assuming that the District Court's order was a mandatory injunction, nothing in the collective-bargaining agreement as interpreted by Barrett required the Company to violate that order. Barrett's award neither mandated layoffs nor required that layoffs be conducted according to the collective-bargaining agreement. The award simply held, retrospectively, that the employees were entitled to damages for the prior breach of the seniority provisions.
> *Id.* at 768-69.

In subsequent cases involving discipline and discharge, the Supreme Court established that an award is contrary to public policy only if the award itself, not the underlying conduct, violates public policy. Thus, in *United Paperworkers Int'l Union v. Misco*, 484 U.S. 29 (1987), the Court enforced an award reinstating an employee who had been found in a car with marijuana gleanings. The Court found "an insufficient basis for holding that his reinstatement would actually violate the public policy … against the operation of dangerous machinery by persons under the influence of drugs or alcohol." *Id.* at 44. And in *Eastern Associated Coal Corp. v. United Mine Workers*, 531 U.S. 57 (2000), the Court enforced an award ordering the reinstatement of an employee who had twice tested positive for illegal drugs. The Court stated that "the question to be answered is not whether Smith's drug use itself violates public policy, but whether the agreement to reinstate him does." *Id.* at 63. The Court observed that there were no laws or regulations requiring the discharge of an employee who twice tested positive for drugs. *Id.* at 67.

In cases involving the public policy exception, the Fifth Circuit has made clear that the question is not whether the underlying conduct violates public policy, but whether the award does. In *Albemarle Corp. v. United Steel Workers*, 703 F.3d 821, 827-28 (5th Cir. 2013), the Court enforced an award reinstating two employees who had failed to report a spill immediately, where the grievants had no prior safety violations, had reported the spill within five minutes, and the spill did not create an emergency. The court cited *Eastern Associated Coal* for the proposition that "[a]lthough a CBA may be unenforceable for contravening public policy, the Supreme Court has made clear that this bar is a high one, and 'any such public policy must be explicit, well defined,

and dominant." *Id.* at 827 (quoting *E. Assoc. Coal*, 531 U.S. at 62). And in *Continental Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 555 F.3d 399 (5th Cir. 2009), the court enforced an award reinstating a pilot who had refused an alcohol test after previously testing positive, where the grievant had not flown an airplane while drunk and would need to requalify before flying a plane.

While there is a clearly defined public policy against discrimination and harassment, there is no "explicit, well defined, and dominant" public policy against reinstating persons who have allegedly engaged in discrimination or harassment. *Weber Aircraft Inc. v. General Warehousemen Local 767*, 253 F.3d 821, 825-26 (5th Cir. 2001) (quoting *Assoc. Coal*, 531 U.S. at 62). The court in *Weber* held that an agreement to reinstate, with certain conditions, an employee who had sexually harassed a female co-worker did not "run contrary to an explicit, well-defined, and dominant public policy, as ascertained by reference to positive law and not from general considerations of supposed public interests." *Id.* at 826 (quoting *E. Assoc. Coal*, 531 U.S. at 63).

Other circuits that have addressed this issue have reached the same result. *See Weber*, 253 F.3d at 826 n.3. As the Fourth Circuit has observed, "[t]here is no public policy that every harasser must be fired. Instead, a company must 'exercise reasonable care to prevent and correct promptly any sexually harassing behavior.'" *Westvaco Corp. v. United Paperworkers Int'l Union*, 171 F.3d 971 (4th Cir. 1999) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998)); *see also Chrysler Motors Corp. v. Int'l Union, Allied Indus. Workers*, 959 F.2d 685, 688 (7th Cir. 1992) (finding no "public policy barring reinstatement in a case in which an arbitrator has, expressly or by implication, determined that the employee is subject to rehabilitation and therefore not likely to commit an act which violates the public policy in the future").

In the present case, the fact that Jones may have engaged in an isolated incident of discrimination or harassment, in no way means that the public policy exception is applicable. Assuming *arguendo* that Jones' comments violated some clearly defined policy, that is not enough to establish that Arbitrator Armendariz' Award violated public policy. The Company cannot point to any explicit, well-

defined, and dominant public policy barring the reinstatement of an employee who may have engaged in discriminatory or harassing behavior. While the Company has an obligation to eliminate discrimination/harassment from the workplace, this does not mean that "every employee who makes a mistake must automatically lose his or her job." *Westvaco*, 171 F.3d at 977. Under clear Supreme Court and Fifth Circuit case authority, Arbitrator Armendariz' Award does not violate public policy. This is especially so in light of the Company's lack of compliance with both the timing and notice provisions of giving the employee and the Union notice of allegations of this type.

**E.    The Union Is Entitled to Attorney's Fees.**

It has long been established in the Fifth Circuit that an award of attorneys' fees is proper where a party, "without justification," refuses to abide by an arbitrator's award. *Delek Refining, Ltd. v. Local 202, United Steelworkers*, 981 F.3d 566, 573 (5th Cir. 2018); *Bell Prod. Eng'rs Ass'n v. Bell Helicopter Textron*, 688 F.2d 997, 999 (5th Cir. 1982); *Dist. 50, United Mine Workers v. Bowman Transp., Inc.*, 421 F.2d 934, 935 (5th Cir. 1970). As the Fifth Circuit recently explained,

> "Without justification" refers not to the strength of the challenge but to the type. On one side of the divide are challenges to an arbitrator's jurisdiction or authority, which do not result in a fee award even if they come up short. On the other are those that go to the "intrinsic merits" of a dispute, which justify fees even if not frivolous.

*Delek Refining*, 981 F.3d at 573. However, a party may not avoid an award of fees by simply asserting that the party is challenging the arbitrator's authority; "[r]ather, the court must look to the realities of the situation." *Int'l Ass'n of Machinists, Dist. 776 v. Texas Steel Co.*, 639 F.2d 279, 283 (5th Cir. Unit A 1981). Thus, where an employer's challenge to an award is actually based on disagreement with the arbitrator's fact-finding or contract interpretation, courts have awarded attorneys' fees. *See Delek Refining*, 891 F.3d at 574; *Texas Steel*, 639 F.2d at 284; *Allied Waste Sys., Inc, v. Int'l Bhd. of Teamsters, Local 767*, No. 4:06-CV-328-Y, 2007 WL 1703634, at *7 (N.D. Tex. June 13, 2007).

Although the Company couches its opposition to Arbitrator Armendariz' Award in terms of the Arbitrator exceeding his authority and jurisdiction, the Company's arguments boil down to simple disagreement with the Arbitrator's factual findings, interpretation of the CBA and work rules, and analysis of applicable labor arbitral law.  The Company may disagree with Arbitrator Armendariz' factual findings and legal conclusions. But that is not an argument that the Arbitrator exceeded his authority.  As the Fifth Circuit explained in *Delek Refining*:

> [A] party cannot avoid paying attorneys' fees by making only a conclusory assertion that it is challenging the arbitrator's "power to make the award." Delek's brief shows that is what it is doing here: in one breath the company argues that the arbitrator transcended his authority, while in another it asserts that he "exercised his contractual authority … inconsistent with applicable principles of contractual construction," which "necessarily touch[es] upon the 'intrinsic merits' of the case." Delek's challenge goes to the merits as the central issue it raises is whether the arbitrator correctly interpreted and applied the exceptions in Article 8.1.

*Delek Refining*, 891 F.3d at 574 (quoting *Texas Steel*, 639 F.2d at 283).

Under these circumstances, the Company's refusal to abide by the Award is without justification, and "[t]he federal labor policy favoring voluntary arbitration dictates that … the [C]ourt should award the party seeking enforcement reasonable costs and attorneys' fees incurred in that effort [to enforce the Award]. This sanction is necessary lest federal labor policy be frustrated by judicial condonation of dilatory tactics that lead to wasteful and unnecessary litigation."  *Delek Refining*, 891 F.3d at 573; *Texas Steel*, 639 F.2d at 284.

## VI. CONCLUSION

Because Arbitrator Armendariz' Award draws its essence from the parties' CBA and is not contrary to public policy, and the Company's refusal to abide by the Award is without justification, the Court should grant the Union's Motion, enforce Arbitrator Armendariz' Award, order the Company to pay Jones' back pay both before and after the date of the Award, with interest from the date of the Award, and award to the Union its costs and reasonable attorneys' fees incurred in

this litigation.

Respectfully submitted,

*/s/ David K. Watsky*
DAVID K. WATSKY
State Bar Number 20932600
***LYON, GORSKY & GILBERT, L.L.P.***
12001 North Central Expressway
Suite 650
Dallas, Texas 75243
Telephone: 214-965-0097
Facsimile: 214-965-0097
E-Mail: dwatsky@lyongorsky.com
***ATTORNEY FOR DEFENDANT AND
COUNTERCLAIMANT***

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document has been filed with the court's CM/ECF system on June 18, 2021, which will send notification of such filing to all counsel of record.

*/s/David K. Watsky*
David Watsky