UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| REFRESCO BEVERAGES US INC., | § | |
| | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:21-cv-00523-O |
| | § | |
| INTERNATIONAL BROTHERHOOD | § | |
| OF TEAMSTERS LOCAL 997, | § | |
| | § | |
|     Defendant. | § | |

<u>MEMORANDUM OPINION & ORDER</u>

Before the Court are Refresco Beverages US Inc.'s Cross-Motion for Summary Judgment (ECF Nos. 22–24), filed September 15, 2021; the International Brotherhood of Teamsters Local 997's Cross-Motion for Summary Judgment (ECF No. 25–26), filed September 15; Refresco's Response (ECF No. 27), filed October 15; and Local 997's Response (ECF No. 29), filed October 15. Having considered the motion, briefing, and applicable law, the Court **DENIES** Refresco's motion for summary judgment and **GRANTS in part** Local 997's motion for summary judgment.

## I.      BACKGROUND

Bobby Jones worked as a forklift operator at Refresco's Fort Worth facility. J. App. 15, ECF No. 24. In 2018, Jones's coworkers began to complain about Jones threatening, harassing, and directing inappropriate gestures toward them. *Id.* at 15–16. Refresco consequently suspended Jones for three days. *Id.* at 16. The recorded reason for the suspension was that "[i]n the past few weeks, Bobby Jones has made several smart comments and hand gestures toward his co-workers to antagonize them. This is not acceptable in the work place." *Id.* at 24.

When Jones returned to work, he continued his disruptive behavior. *Id.* at 16. The complaints became so numerous that Marshall kept a running log of them, recording a new

complaint almost daily. *Id.* On May 28, 2019, several months after Jones's three-day suspension, Refresco fired Jones. *Id.* at 17. The recorded reason for Jones's termination was that he "again engaged in such behavior, including failing to attend a Team Meeting, questioning assignments, refusing to cover for another employee on lunch break, blocking an employee's access to Line 3, and spreading false rumors or making false claims about other employees." *Id.* at 26.

Jones is a member of Local 997, which has a Collective Bargaining Agreement ("CBA") with Refresco. After he was fired, Jones filed a grievance under the CBA challenging his termination and the earlier suspension. *Id.* at 17. The parties agreed to arbitrate the dispute. The arbitrator heard witness testimony and arguments from the parties. *Id.* at 17–29. On March 28, 2021, the arbitrator issued an award. *Id.* at 31. He sustained the grievance, finding several "procedural due process issues" with the way Refresco handled Jones's termination and suspension. *Id.* at 29.

First, the arbitrator concluded that Jones's termination was untimely. *Id.* Under the CBA, Refresco must "impose discipline within five (5) working days of completing its investigation of the behavior or misconduct leading to the discipline." *Id.* at 55. The arbitrator found that three of the five incidents cited as reasons for Jones's termination occurred over one month prior to his discharge. *Id.* at 29. Those reasons thus "occurred outside the appropriate time period for taking discipline." *Id.* The other two incidents were that Jones questioned assignments and spread false rumors. *Id.* The arbitrator found that the rumors were "explained away," and the questioning of assignments was "entirely reasonable" when "an employee in one position [was] asked to perform the duties of another position." *Id.*

Second, the arbitrator concluded that Jones's suspension was improper because Refresco had changed its reasons for the suspension. The complaint that formed the basis of the suspension

2

contained no allegations that Jones had made gestures towards the complainant. *Id.* at 29–30. At his suspension hearing with Marshall, Jones apparently made threatening gestures toward Marshall, but the suspension document did not record that incident. *Id.* Rather, the recorded reason for the suspension was that "Jones has made several smart comments and hand gestures toward his co-workers to antagonize them." *Id.* at 16. Because the suspension was not supported by the underlying complaint, the arbitrator found that Refresco inappropriately expanded the reasons for Jones's suspension. *Id.* at 30. The arbitrator inferred an improper motive from Refresco's changing reasons and concluded that the suspension was pretextual. *Id.*

The arbitrator therefore sustained the grievance over the suspension and termination. *Id.* He concluded that the due process issues with the termination and the changing reasons for the suspension precluded a finding of "just cause." *Id.* In addition, the arbitrator found that Refresco had failed to provide Jones with the appropriate pre-termination documents as required in the employee handbook. *Id.* Finding that Refresco had failed to establish "just cause" for Jones's termination and suspension, the arbitrator ordered Refresco to reinstate Jones to his former position with all benefits and seniority. *Id.* at 30–31. The parties had already negotiated an agreement for backpay, but the arbitrator retained jurisdiction to resolve any issues regarding that agreement. *Id.*

Instead of reinstating Jones and awarding him backpay, Refresco filed this lawsuit. It argues that the arbitrator exceeded his power under the CBA in violation of 29 U.S.C. § 185 and 9 U.S.C. § 10. *See* Am. Compl. 15–17, ECF No. 10. Refresco requests that the Court issue an order vacating the arbitration order. *Id.* at 17. Local 997 filed an answer and counterclaim to enforce the arbitration award and backpay agreement. *See* Answer 12, ECF No. 11. In addition, Local 997 requests backpay from the date of the award to the date of the Court's judgment, plus interest. *Id.* The parties filed cross-motions for summary judgment and exchanged responses.

## II.      LEGAL STANDARDS

### A.      Summary Judgment Standard

Summary judgment is appropriate only where the pleadings and evidence show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is not "a disfavored procedural shortcut," but rather an "integral part of the Federal Rules as a whole, 'which are designed to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[T]he substantive law will identify which facts are material." *Id.* The movant must inform the court of the basis for its motion and identify the portions of the record that reveal there are no genuine disputes of material fact. *Celotex*, 477 U.S. at 323.

The court must view the evidence in the light most favorable to the nonmovant. *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 389 (5th Cir. 2013). "Moreover, a court must draw all reasonable inferences in favor of the nonmoving party and may not make credibility determinations or weigh the evidence." *Id.* And if there appears to be some support for disputed allegations, such that "reasonable minds could differ as to the import of the evidence," the court must deny the motion for summary judgment. *Anderson*, 477 U.S. at 250.

"The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). If a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," the court must grant summary judgment. *Celotex*, 477

U.S. at 322. In that situation, no genuine dispute of material fact can exist, as the failure to establish an essential element of the claim "necessarily renders all other facts immaterial." *Id.* at 323.

### B.       Standard of Review of Labor Arbitration Awards

"A court's review of arbitral awards interpreting labor agreements is 'exceedingly deferential.'" *Delek Ref., Ltd. v. Loc. 202, United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFLCIO*, 891 F.3d 566, 570 (5th Cir. 2018) (citation omitted). Even if an arbitrator "seriously erred in his fact finding or contract interpretation," a court will sustain the arbitrator's decision as long as it "is rationally inferable from the purpose of the CBA." *Id.* But an arbitrator's power is not limitless.

Courts will not defer to an arbitrator's decision that "exceeds the jurisdictional limits drawn in a CBA or acts contrary to its express provisions." *Id.* (citation omitted). Ignoring the plain language of the contract is a common example. *E.g.*, *id.*; *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987); *Smith v. Transp. Workers Union, AFL-CIO Air Transp. Loc. 556*, 374 F.3d 372, 375 (5th Cir. 2004); *Delta Queen Steamboat Co. v. Dist. 2 Marine Engineers Beneficial Ass'n, AFL-CIO*, 889 F.2d 599, 602 (5th Cir. 1989). A court may vacate an arbitration award that exceeds the scope of the arbitrator's authority. *Smith*, 374 F.3d at 375.

### III.       ANALYSIS

Refresco challenges the arbitration award on two grounds. First, Refresco argues that the arbitrator exceeded his power under the CBA. Second, Refresco argues that the arbitration award violates public policy. Neither challenge prevails.

### A.       The arbitrator did not exceed his power under the CBA.

The arbitration award was within the CBA's jurisdictional limits. Under the CBA, the arbitrator "shall have the power to make determinations of fact on the questions submitted to him and apply them to the provisions of this Agreement alleged to have been violated." J. App. 52,

ECF No. 24. Consistent with judicial precedent, the CBA recognizes that the arbitrator is "bound by the facts and evidence submitted to him and may not go beyond the terms of [the CBA] in rendering his decision." *Id.* Finally, "[t]he decision of the arbitrator shall be in writing and shall be final and binding upon the parties." *Id.*

The arbitrator reached his decision after finding that Refresco (1) failed to abide by the CBA time limits for issuing discipline, (2) inappropriately expanded the reasons for suspending Jones, (3) failed to comply with the disciplinary policy in the employee handbook, and (4) failed to provide notice of specific charges to Local 997 and Jones. *Id.* at 29–31. The arbitrator concluded that the facts precluded a finding of just cause and justified an inference that Jones's firing was pretextual. *Id.* at 20–31. In short, the arbitrator's conclusion is "rationally inferable from the purpose of the CBA." *Delek Ref.*, 891 F.3d at 570.

Refresco raises essentially the same arguments against both the suspension and termination findings. It argues that the arbitrator exceeded his authority by setting aside the suspension and termination even though he found that the underlying conduct constituted harassment. *See* Pl.'s Summ. J. Br. 32, 37, ECF No. 23. Under the CBA, harassment is "just cause" for discipline. J. App. 50, ECF No. 24. Refresco argues that the arbitrator's factual finding that Jones engaged in harassment means that he *must* find that Refresco had just cause to suspend and terminate Jones. Pl.'s Summ. J. Br. 32–37. Refresco misreads the arbitration award. The arbitrator stopped short of discussing whether Jones's conduct provided just cause. Rather, the arbitrator found that "the due process issues and the changing reasons are sufficient to *preclude* a finding of 'just cause.'" J. App. 30, ECF No. 24 (emphasis added). The question is thus whether the arbitrator had the authority to set aside the suspension and termination for procedural defects. He did.

The arbitrator had the authority to set aside the suspension. The arbitrator concluded that the suspension procedure was defective because Refresco changed its reasons for the suspension. *Id.* at 29–30. The recorded reason for the suspension was that "Jones has made several smart comments and hand gestures toward his co-workers to antagonize them." *Id.* at 16. But the underlying complaint made no mention of inappropriate hand gestures. *Id.* at 29. Because the suspension was not supported by the underlying complaint, the arbitrator inferred an "improper motive" and found that the suspension was pretextual. *Id.* at 29–30. That is, Refresco suspended Jones for reasons other than those stated in the suspension document. And the CBA does not permit Refresco to suspend employees for unstated, unknown reasons.

Refresco responds that the arbitrator's finding that Jones's conduct constituted harassment means he necessarily found "just cause" for the suspension. Refresco points out that the CBA says that in cases of harassment "the arbitrator's *sole role* will be to determine whether the employee engaged in the behavior alleged, in which case the employee's termination shall be upheld." *Id.* at 51 (emphasis added). That provision does not support Refresco's argument for two reasons. First, the provision applies explicitly to "termination," not suspension. That the CBA expressly limits the arbitrator's authority in termination cases implies his authority is *not* so limited in suspension cases. Such an interpretation is at least "rationally inferable" from the plain language of the CBA. *Delek Ref.*, 891 F.3d at 570. Second, as discussed already, the arbitrator stopped short of finding that any conduct constituted "just cause." The arbitrator set aside the suspension because he found various procedural defects in the suspension, not because he concluded the factual events fell short of "just cause" for the suspension. Said differently, the arbitrator set aside the suspension because of what *Refresco* did, not because of anything *Jones* did. The arbitrator therefore did not exceed his authority under the CBA by setting aside Jones's suspension.

Likewise, the arbitrator had the authority to set aside the termination. The arbitrator concluded that Refresco did not abide by the CBA disciplinary procedures in terminating Jones. Article 13, Section 3 of the CBA requires Refresco to "impose discipline within five (5) working days of completing its investigation of the behavior or misconduct leading to the discipline." J. App. 55, ECF No. 24. Three of the five incidents for Jones's suspension violated the CBA's procedural timeline. *Id.* at 29. The other two incidents did not amount to a violation of anything in the CBA or any company policy. *Id.* The arbitrator's role is to hold the parties to the terms of the CBA, and the basis for setting aside the termination came straight from the CBA. The arbitrator therefore had authority to set aside Jones's termination.

Refresco also argues that the arbitrator erred in consulting the employee handbook. The CBA "is the complete agreement between [the parties]," and "[a]ll of the understandings, agreements and undertakings arrived at by the parties are set forth in [the CBA]." J. App. 69, ECF No. 24. Refresco argues that the employee handbook is not part of the CBA, and thus the arbitrator erred in applying it to the parties. Elsewhere, however, the CBA provides that Refresco may "adopt and from time to time modify, rescind, or change . . . and to enforce rules governing employee behavior, including rules of conduct and safety rules." *Id.* at 60. The CBA also says that "[t]o the extent a subject or matter is not expressly and directly covered by this [the CBA], the applicable Company policies, including human resources and departmental policies, shall govern." *Id.* at 61. Indeed, Refresco itself cites the handbook for the very harassment policies it says Jones violated. *See* Pl.'s Summ. J. Br. 33, ECF No. 23. Refresco cannot have it both ways. The CBA clearly permits Refresco to issue policies such the employee handbook, and the arbitrator did not err in consulting it.

Whether the arbitrator exceeded his authority comes down to whether the CBA permits him to hold Refresco to its disciplinary policies. "As long as the arbitrator's award 'draws its essence from the collective bargaining agreement,' and is not merely 'his own brand of industrial justice,' the award is legitimate." *Misco*, 484 U.S. at 36 (citation omitted). The arbitrator did not impose his own arbitrary procedural requirements on Refresco. He took the timelines and procedures straight from the CBA. The arbitrator's award is therefore legitimate.

### B.    The arbitration award does not violate public policy.

Refresco also argues that the Court must vacate the arbitration award because enforcing the award would violate public policy. The Fifth Circuit has recognized that courts may set aside an arbitration award if enforcing the award would violate public policy. *See Sarofim v. Tr. Co. Of The W.*, 440 F.3d 213, 216 (5th Cir. 2006). The question is "whether the CBA, in providing for the [arbitration award], is contrary to 'public policy, as ascertained by reference to positive law and not from general considerations of supposed public interests.'" *Albemarle Corp. v. United Steel Workers ex rel. AOWU Loc. 103*, 703 F.3d 821, 827 (5th Cir. 2013) (citation omitted). "Public policy used to vacate an award 'must be explicit, well defined, and dominant.'" *Sarofim*, 440 F.3d at 216 (citation omitted).

Refresco argues that enforcing the award would violate "an established public policy against racial, sexual, religious, and other types of harassment." Pl.'s Summ. J. Br. 48, ECF No. 23. Refresco cites Title VII, the Texas Labor Code, and Supreme Court cases in support of such a policy. *See id.* But even if Refresco is correct that there is a clear public policy against certain types of harassment, there is no clear public policy that every harasser must be fired or suspended without proper procedure. *See Weber Aircraft Inc. v. Gen. Warehousemen & Helpers Union Loc. 767*, 253 F.3d 821, 826 n.3 (5th Cir. 2001). Refresco frames the issue as though enforcing the arbitration award necessarily condones Jones's behavior. That is not the case. The arbitrator set

aside Jones's discipline because Refresco did not comply with its disciplinary procedures, not because he approved of Jones's behavior. Enforcing an arbitration award that requires a company to abide by its agreements before disciplining employees for harassment does not violate public policy.

### C. Local 997 is not entitled to attorneys' fees.

Local 997 moves for summary judgment on its request for attorneys' fees. In cases such as this, "fees should be awarded when the challenge to the labor arbitration is 'without justification.'" *Delek Ref.*, 891 F.3d at 573 (citation omitted). "'Without justification' refers not to the strength of the challenge but to the type." *Id.* A party may challenge an arbitrator's jurisdiction, but not the merits of the decision. *Id.* Knowing this, parties often "attempt to transform a merits claim into an excess-of-powers claim." *Id.* at 574 (cleaned up). The question is whether the party challenging the award is truly challenging the arbitrator's jurisdiction. *Id.*

Refresco's arguments are, at bottom, challenges to the arbitrator's jurisdiction. Refresco argues that the CBA did not grant the arbitrator authority to hold Refresco to its discipline procedures. Though Refresco is wrong about that, its arguments are directed to the power of the arbitrator under the CBA. For example, although Refresco disagrees with the arbitrator's ruling on the timeliness of Jones's termination procedures, it "accepts his ruling on timeliness" for purposes of its challenge. Pl.'s Summ. J. Br. 38, ECF No. 23. A party may not disguise a merits challenge with "conclusory assertions" that the award exceeds the arbitrator's jurisdiction. *Delek Ref.*, 891 F.3d at 573. But neither may a party receive attorneys' fees with conclusory assertions that the other side is challenging the merits. Local 997 does just that. It asserts that Refresco's arguments "boil down to simple disagreement with the Arbitrator's factual findings, interpretation of the CBA and work rules, and analysis of applicable labor arbitral law." Def.'s Summ. J. Br. 22, ECF No.

10

26. But Local 997 does not explain *that* assertion or point to specific arguments in Refresco's brief. The Court therefore declines to award attorneys' fees.

### D.   Local 997 is not entitled to additional backpay.

Local 997 also seeks additional backpay from the date of the arbitration award to the date of the Court's judgment, plus interest. Answer 12, ECF No. 11. But the CBA provides that "[t]he maximum back pay that may be awarded in connection with any grievance shall be limited to one hundred twenty (120) days." J. App. 53, ECF No. 24. Moreover, the arbitrator declined to award backpay because the parties had reached a prior agreement on the issue. *Id.* at 30–31. If later disputes arise regarding backpay, the arbitrator retained jurisdiction to resolve them. *Id.* Accordingly, the Court declines to award Local 997 additional backpay and interest.

## IV.   CONCLUSION

For the foregoing reasons, the Court declines to vacate the arbitration award. Accordingly, the Court **DENIES** Refresco's Cross-Motion for Summary Judgment (ECF No. 22) and **GRANTS in part** Local 997's Cross-Motion for Summary Judgment (ECF No. 25). The Court **ORDERS** the following:

1)   Refresco's claim requesting that the Court vacate the March 28, 2021 arbitration award is **DISMISSED**.

2)   Local 997's claim for attorneys' fees is **DISMISSED**.

3)   Local 997's claim for additional backpay and interest after the March 28, 2021 arbitration award is **DISMISSED**.

**SO ORDERED** on this **14th day** of **December, 2021**.

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**